GEORGE BRIGHAM v. ARCHER D. MARTIN.

*Logs and logging—Contract—Construction—Conclusiveness of tally.*

1. A contract for cutting the pine and hemlock timber on a designated section of land provided that the contractor should cut everything suitable to work up into shingles or lumber; that he should furnish a scaler, to be agreed upon by the parties, to scale said lumber logs; and that he should have said scaler furnish the scale sheets to the contractee each week. The contract further provided that the contractee should pay $2 per thousand for the lumber logs, according to said log scale; that said log scale should include mill culls, but not dead culls; that the contractor was to be paid for the mill culls, the same as for other lumber; that upon the final settlement the shipping tally of a certain lumber firm which was to saw the logs should be final as to the number of thousand feet of said lumber, and that said settlement should be made according to said shipping tally. And it is held that the contract is free from ambiguity, and its meaning should be stated to the jury by the court; that the contractor was to cut and put afloat all of the timber mentioned, regardless of what it would produce; that he was to have advancements upon his own scale, and final settlement and payment according to the shipping tally of said lumber firm, which was to be final; and that the contractor was not to be paid for dead culls.

2. "Dead culls" are an unavoidable product from the saw, in sawing logs, distinguishable from higher grades produced, which higher grades, in the contract and tally hereinbefore referred to, included shipping culls and better, and mill culls, being everything above the grade of dead culls.

3. The shipping tally included a quantity of dead culls, and it was contended by the contractor, in an action brought by him to obtain pay for cutting the amount of logs from which such dead culls were made, that there was evidence tending to show that the lumber called "dead culls" in the shipping tally included some lumber that, according to the grading of other dealers, would be included in the "mill culls." And it is held that the contract made the shipping tally of said lumber firm final; that it was not the custom of the trade as to grading, but the grading of said lumber firm at the time of shipment, that was to govern; and that the plaintiff cannot repudiate that, because dissatisfied with the grading, and ask for some other scale.

4. Plaintiff sought to recover upon the *quantum meruit* for putting into the lake in which-the logs were to be delivered a quantity of logs which had been marked in the woods as unfit to saw. And it is held that, inasmuch as the contract required the plaintiff to put all logs into the lake, and gave the defendant the right to require it, no reason for complaint is discovered; that the fact that the logs in question were not tallied in the woods is immaterial; that the tally at the mill, at the time of shipment, was relied on to determine the amount of lumber produced from the logs, and presumably included all that were put into the lake and sawed.

5. Plaintiff contended that, because the defendant realized something from the sale of the dead culls, they were merchantable, and that it was unjust to deny him payment for the same. And it is held that, under the contract, payment was to be made according to a certain tally; that all that the logs produced was defendant's; that, if he could get anything for the dead culls, the plaintiff was not thereby injured, and it was a matter of no concern to him.

Error to Kent. (Grove, J.) Argued November 20, 1894. Decided December 18, 1894.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Maher & Salsbury,* for appellant.

*Fallass & Swarthout,* for defendant.

HOOKER, J. The plaintiff brought an action, as assignee

for collection, upon a contract for cutting logs. The following is that portion of the contract necessary to an understanding of the questions involved in the case:

"2. The said Williams agrees to cut all the pine and hemlock timber on section 35 in township 16 north, of range 13 west, in Newaygo county, Michigan, commencing on the north tier of forties, and cut clean as far as he goes, and thereafter to cut from said premises in such places as he and the said Martin shall agree, and, in case of their failure to agree, then from such places as Morton, Lewis & Co. from time to time direct. And the said Williams also agrees that, in taking said timber from the tree, *he will cut everything which is suitable to work up into shingles or lumber*, and that he will cut everything clean as he proceeds with such cutting, and that he will cut the trees down as low, and the logs into such lengths, as he shall from time to time be directed to do by the said Martin, and that he will cut such of said timber into logs for lumber *as he shall be directed to by said Martin*, and the balance of the pine timber he will cut into shingle logs, and that he will deliver all of said timber so cut afloat in the lake on section 27 aforesaid, and that he will deliver the same in said lake, afloat, with a sufficient dispatch to keep the sawmill running to its full capacity during the sawing season of each and every year until said job is fully completed, and that he will cut and deliver, afloat in said lake, the shingle logs as fast as he shall come to them in the cutting of said timber.

"3. Said Williams also agrees that he will furnish at his own expense a scaler, to scale said lumber logs,—the scaler to be agreed upon between the parties hereto,—and that he will have said scaler furnish to said Martin the scale sheets each and every week.

"4. The said Martin, in consideration of the premises, agrees that he will pay to said Williams the sum of $2 per thousand for the lumber logs, according to said log scale, at the end of each and every 30 days. Said scale is to include mill culls, but not dead culls, and said Williams is to be paid for the same the same he is for other lumber, and that upon the final settlement the shipping tally of Morton, Lewis & Co. shall be final *as to the number of thousand feet of said lumber, and the final settlement shall be made according to said shipping tally.*"

The shingle logs were to be paid for under a portion of the contract not given here. Morton & Lewis' shipping tally included 773,320 feet of dead culls, and the action is brought so obtain pay for cutting the amount of logs from which they were made.

Our understanding of dead culls is that they are an unavoidable product from the saw, in sawing logs, distinguishable from higher grades produced, which higher grades, in this contract and tally, included shipping culls and better, and mill culls, being everything above the grade of dead culls. It was contended by counsel for plaintiff that the provision for payment, contained in the contract, referred to all lumber that should be made from the lumber logs, as contradistinguished from shingle logs, and that the shipping tally of Morton & Lewis was conclusive only as to the number of thousand feet produced, and not as to the separation of the lumber of different grades. The claim was also made that Morton & Lewis graded their lumber higher than other manufacturers, and that the defendant made a statement to plaintiff's assignor, Williams, about lumber that had not been accounted for, to the effect that something like 800,000 feet had been shipped out of the yard as No. 2 mill culls, and that at the time of making the contract he had assured Williams that dead culls contain no good lumber, but are worthless lumber. Upon this, it was claimed that the jury should have been allowed to construe the contract. In our opinion, the contract was free from any ambiguity, and it was for the court to instruct the jury as to its meaning. We concur with the circuit judge in the opinion that plaintiff's assignor was to cut and put afloat all of the timber mentioned, regardless of what it would produce; that he was to have advancements upon his own scale, and final settlement and payment according to the shipping tally of Morton & Lewis, which was to be final, and that he was

not to be paid for dead culls. The scale to be made in the woods was to include mill culls, *but not dead culls,* and he was to be paid for the same the same as for other lumber. It does not require the citation of authorities to show that the talk between the parties was merged in the instrument.

It is next contended that there was evidence tending to show that the lumber called "dead culls" in the shipping tally included some lumber that, according to the grading of other dealers, would be included in the mill culls. This is based on the testimony of Sproat, who said that Morton & Lewis' grade was about two points better than any other mill he ever saw, in their grade. The contract of the parties made the shipping tally of Morton & Lewis final. It was not the custom of the trade as to grading, but the grading of Morton & Lewis at the time of shipment. The plaintiff cannot repudiate that, because dissatisfied with the grading, and ask for some other scale.

A claim is made that Williams did a quantity of work not contemplated by the contract, and that plaintiff should be allowed to recover for that upon the *quantum meruit.* Williams testified that, in scaling the logs in the woods, some of them were marked as unfit to saw. These were culled as not being "one-third good." He stated that some of these (it is not shown how many) had been skidded before being scaled. Afterwards these logs, which he says aggregated 600,000 feet, were put into the lake, upon orders sometimes from the defendant, and sometimes from Morton & Lewis. Inasmuch as the contract required Williams to put all logs into the lake, and gave the defendant the right to require it, we discover no reason for complaint. The cancellation was made by Williams' scaler, upon the basis mentioned. There is no evidence that the defendant or Morton & Lewis had anything to do with the cancellation, or requested that they be drawn from the

skidway. It was Williams' duty to put them in the lake according to the contract. The fact that they were not tallied in the woods is immaterial. The tally at the mill, at the time of shipment, was relied on to determine the amount of lumber produced from the logs, and presumably included all that were put into the lake and sawed.

Prominence is given to the fact that the defendant realized something from the dead culls. Upon it is predicated the argument that dead culls were merchantable, and that it was unjust to deny Williams payment for the 'same. The answer is obvious. The defendant made a contract for cutting logs, payment to be made according to a certain tally. Unquestionably, all that the logs produced was his. If he could get anything for the slabs or bark, sawdust, or dead culls, it did not injure Williams, and was a matter of no concern to him.

The judgment must be affirmed.

The other Justices concurred.